UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

AARON O'BANNON, )
　　　　　　　　　　　　　　　　 )
　　　　　Plaintiff )
　　　　　　　　　　　　　　　　 )
v. ) No. 1:13-cv-207-DBH
　　　　　　　　　　　　　　　　 )
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
　　　　　　　　　　　　　　　　 )
　　　　　Defendant )

# REPORT AND RECOMMENDED DECISION[1]

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that the administrative law judge failed to provide adequate reasons for the weight she assigned to the opinion of Dr. Gaddis, a treating physician; failed to provide adequate reasons for basing her finding concerning the plaintiff's residual functional capacity ("RFC") primarily on the opinions of state-agency nonexamining physicians; and failed to recognize and resolve a conflict between the testimony of the vocational expert and the Dictionary of Occupational Titles. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 405.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured

---

[1] This action is properly brought under to 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), as amended effective January 1, 2013, which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 12, 2014, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

status requirements of the Social Security Act (for purposes of SSD) only through December 31, 2011, Finding 1, Record at 16; that he had not engaged in substantial gainful activity since November 11, 2009, the alleged date of onset of disability, Finding 2, *id.*; that he suffered from degenerative joint disease of the knees, status post-surgical repair, arthritis of the wrists and hands status post-right carpometacarpal joint fusion, and a cardiac condition, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id.* at 17-18; that he had the RFC to perform work at the light exertional level, except that he could only walk and stand for a combined total of four hours in an eight-hour workday, could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch, should not engage in work involving constant hand controls, handling, or grasping with either hand, and should not work at jobs involving complicated or detailed tasks, Finding 5, *id.* at 19; that he was unable to perform any past relevant work, Finding 6, *id.* at 24-25; that, given his age (36 on the alleged date of onset), limited education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 7-10, *id.* at 25; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from the date of alleged onset through the date of the opinion, April 18, 2012, Finding 11, *id.* at 26. The Appeals Council declined to review the decision, *id.* at 1-3, making it the final determination of the commissioner. 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 633, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v.*

*Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Treating Physician Opinion

The plaintiff asserts that the administrative law judge "rejected Dr. Gaddis' treating source opinion for inadequate reasons" because the reasons stated in her opinion 'do[] not bear scrutiny." Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 11) at 5. The administrative law judge wrote the following about Dr. Gaddis:

> The undersigned has also considered the opinion of John Gaddis, D.O., the claimant's primary care physician. (13F) Dr. Gaddis stated in June 2011 that the claimant could lift and carry 25 pounds occasionally and 10 pounds frequently; could stand or walk less than 2 hours total in an 8-hour workday; must periodically alternate between sitting and standing to relieve pain or discomfort; should never climb, kneel, crouch, or crawl; could occasionally balance and stoop; could frequently reach, handle, and feel, and only occasionally finger, with the left upper extremity; could use the right upper extremity only occasionally and never frequently; and has some reduction in the ability to concentrate due to pain. (13F). The undersigned has given Dr. Gaddis's opinion little weight, as it is quite inconsistent with the claimant's work history

3

in 2010 and 2011, which admittedly required frequent use of his hands and wrists to such an extent that he was unable to wear a stiff brace while working. (17F/4, 5). In additional, Dr. Gaddis assessed significant limitations regarding use of the claimant's left hand, yet there are no complaints of left wrist or hand pain since April 2010. (14F-18F). Moreover, Dr. Gaddis's opinion appears to be based heavily on the claimant's subjective complaints of pain, as the record does not contain any thorough evaluations of the claimant's knee performed by Dr. Gaddis. (14F).

Record at 24.

The plaintiff first challenges this paragraph as "not internally consistent" because the administrative law judge cited the plaintiff's work history in 2010 and 2011 "as evidence against Dr. Gaddis' opinion[,]" even though "[i]t was work that he could not sustain." Itemized Statement at 5 (emphasis omitted). As evidence that the plaintiff "could not sustain" this work, the plaintiff cites the administrative law judge's finding that "he had no work at SGA since the alleged onset date in 2009." *Id*.

The two noted findings are not in fact inconsistent, and the administrative law judge was at pains to make this clear. The finding of a lack of substantial gainful activity ("SGA") is based on "the evidence of record" and a specific reference to one week of work in summer 2011 about which the plaintiff testified. Record at 16-17. The finding about the plaintiff's actual work in 2010 and 2011 is based on cited exhibits in the record. The administrative law judge noted these entries as follows:

> The evidence pertaining to the claimant's work history diminishes the credibility of his allegations. He testified at the hearing that he last worked in the summer of 2011 at a lobster company, but only lasted for 1 or 2 weeks because he was unable to keep up the pace. He stated that prior to that, he had not worked since the alleged onset of disability in November 2009. However, as discussed above, treatment notes show that he reported working quite consistently through 2010 and part of 2011. In December 2009, he stated that he was doing shipping and receiving at Whitney, and would transfer to the tool shed in the summer. (16F/4). In January 2010, he stated that he was working at a fish factory.

4

> (3F/1-2). In May 2010, he stated that he was currently working with lobster fishing, and reported that he was still working on a lobster boat in July 2010. (17F/4, 6; 18F/18). He reported in February 2011 that he was no longer working, but that he was happy he had gotten a job to start later and was concerned about his hand pain because he was anticipating a busy work schedule in the spring. (14F/20; 17F/10). In May 2011, he repeatedly stated that he was in the midst of a busy work season at the lobster processing company. (16F/1, 2). The claimant presumably did not report income from any of this work, as his earnings statements do not reflect any earnings during 2010 or the beginning of 2011. (6D; 7D). In addition to significantly undermining his credibility, the fact that the claimant was working during much of the adjudicatory period suggests that he has retained significant residual capacity. In fact, he described his work with lobster fishing as requiring frequent use of his wrists and hands, and the vocational expert testified that it was performed a[t] medium exertional capacity. Thus, the claimant's recent and unreported work history significantly diminishes the credibility of his allegations of disabling pain.

*Id*. at 23. *See id*. at 417, 428-29, 431-32, 445-46, 447, 451, 477.

Substantial gainful activity is defined for purposes of Social Security claims as "work activity that involves doing significant physical or mental activities" and "work activity that you do for pay or profit." 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). The threshold earning level for this purpose was $1,000 monthly in both 2010 and 2011. *See* Social Security Administration Program Operation Manual System ("POMS") § 10501.015(B) ("Policy—Table 2—Nonblind Individuals Only"). In this record, there is no evidence of any earnings by the plaintiff during this period, so the administrative law judge could not find that the work rose to the level of substantial gainful activity. That does not mean, however, that the administrative law judge may not use the cited records of evidence of an ability to work at a level less restricted than that assigned to the plaintiff by his treating physician.

This court has said in the past that, when an administrative law judge gives a claimant the benefit of the doubt and finds that certain work did not constitute substantial gainful activity, he or she may still use that work to question the claimant's credibility. *See, e.g., Arsenault v.*

*Astrue*, Civil No. 08-269-P-H, 2009 WL 982225, at *6 (D. Me. Apr. 12, 2009) (and cases cited therein). That is what the administrative law judge did in this case. In addition, her analysis provided evidence that contradicts some of Dr. Gaddis's assigned limitations. There is no basis for remand here. *See, e.g., Allen v. Astrue*, No. 2:10-cv-35-DBH, 2010 WL 5452123, at *5-*7 (D. Me. Dec. 28, 2010).

The plaintiff next asserts that Dr. Gaddis's opinions are not inconsistent with the medical evidence of record because the plaintiff "underwent surgical fusion in July 2010[]" on his right hand. Itemized Statement at 5-6, Record at 449. I do not see how this surgery has any bearing on the limitations Dr. Gaddis assigned to the plaintiff's left hand, Record at 396, and the plaintiff cites no authority for his necessarily-implied conclusion that such surgery always creates the physical limitations described by Dr. Gaddis. The plaintiff has not established his premise in this regard.

The plaintiff next challenges that administrative law judge's finding that he had not complained of ongoing left wrist or hand pain since 2010, which he characterizes as "an unsupported assumption," because "Dr. Gaddis' treatment notes are not a verbatim transcript of his conversations with [the plaintiff], nor are they intended to be." Itemized Statement at 6. That may well be, but the absence from the notes of the plaintiff's primary care provider of any mention of a source of an asserted physical limitation may certainly serve as evidence of the absence of such a source. If the pain in the plaintiff's left wrist and hand was enough to limit that hand to only occasional use for any purpose, Record at 396, it is reasonable to assume that such significant pain would be mentioned at some point in the physician's records of over a year

6

of medical treatment.[2] "This court has consistently cited an absence of corroborating notes in the medical record as one reason to give lesser weight to a particular provider's opinions, and that is all that the administrative law judge can be said to have done in this case." *Stain v. Astrue*, No. 2:11-cv-225-DBH, 2012 WL 1067867, at *5 (D. Me. Mar. 28, 2012) (citations omitted).

Next, the plaintiff asserts that the administrative law judge "employed an incorrect legal standard[]" when she observed, Record at 24, that Dr. Gaddis's opinion appeared to be based primarily on the plaintiff's subjective complaints of pain rather than any thorough evaluation of his knee. Itemized Statement at 6. He protests that "there is no requirement in the regulations that Dr. Gaddis have personally conducted a thorough evaluation of [the plaintiff's] knee problems[,]" where he was required, as the plaintiff's primary care physician, only to "maintain an overview and to coordinate all of [the plaintiff's] care." *Id*. The plaintiff cites no authority for his assertion about the limited scope of the responsibility of a primary care medical professional, but, in any event, the administrative law judge's observation imposes no such requirement.

The plaintiff proffers an April 2011 MRI of the plaintiff's left knee which Dr. Gaddis reviewed as evidence of the sufficiency of Dr. Gaddis's knowledge of the condition of the plaintiff's knee. Itemized Statement at 7-8. This study was not mentioned by Dr. Gaddis when the form on which he checked a limitation to less than two hours of standing and/or walking in an eight-hour workday asked him to "provide explanation of the precise limitation opined." Record at 394. The professional who read the MRI reported no change from a prior study in 2009, *id*. at 422, and it was reviewed by two state-agency physicians who found the plaintiff capable of work at the light exertional level. *Id*. at 362, 372. The plaintiff does not suggest why

---

[2] The defendant points out that there is also no record of any mention by the plaintiff of pain in the left wrist to the surgeon who operated on his right hand. Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 15) at 7.

or how the administrative law judge's finding that Dr. Gaddis relied on the plaintiff's reports of pain and limitation in fashioning his limitations was necessarily erroneous.

Finally, the plaintiff asserts that the administrative law judge "could have recontacted" Dr. Gaddis "if [she[ was unclear concerning the bases for Dr. Gaddis' assessed functional capacity limitations[.]" Itemized Statement at 8. However, there is no suggestion in the administrative law judge's opinion that she was "unclear" about any aspect of Dr. Gaddis's conclusions as they were listed on the form. The relevant regulation merely provides that an administrative law judge will contact a treating source directly only when the evidence that has been received is inadequate to support a determination of disability. The plaintiff points to no "conflict or ambiguity" in Dr. Gaddis's records and reports "that must be resolved." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). In this district,

> [a]n administrative law judge is not required to further develop the record when a claimant is represented, as the plaintiff was here, . . . unless she does not understand any of the treating physicians' records or finds gaps in those records or the records are otherwise inadequate to allow her to decide the case. 20 C.F.R. § 404.1512(e)(1); *see also White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). In order to obtain remand on this basis, the plaintiff must point to specific facts that were not brought out during the hearing and provide proof that additional medical evidence existed. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

*Archer v. Colvin*, Civil No. 1:13-cv-00018-NT, 2014 WL 457641, at *6 (D. Me. Feb. 4, 2014) (quoting *Plato v. Colvin*, Civil No. 1:12-cv-319-DBH, 2013 WL 5348603, at *12 (D. Me. Sept. 24, 2013)). The Itemized Statement does not meet this standard.

### B. Inconsistent Findings

The plaintiff's second alleged area of error is based on an assertion that the administrative law judge "made inconsistent findings which cannot be reconciled." Itemized Statement at 8. He mentions only one such inconsistency, however. He asserts that he is entitled to remand

because the administrative law judge found his cardiomyopathy to be severe but found "no limitations from the condition." *Id*. He argues that "[h]aving found the condition severe, the ALJ was obligated to find the limitations stemming from the condition." *Id*. He acknowledges that the administrative law judge wrote that this impairment "is reflected in the limitation to a light exertional capacity[,]" Record at 23, but contends that "[t]he record does not support her assertion." Itemized Statement at 8.[3]

This is so, he explains, because the report of one of the state-agency reviewing physicians upon which the administrative law judge relies, Dr. Hall, does not mention the cardiomyopathy, and the report of the other, Dr. Trumbull, while mentioning the condition, "did not add any limitations over and above the limitation to the light level of exertion already found by Dr. Hall." *Id*. at 9.

This argument is based on at least two false premises. The first is that an administrative law judge must always find one or more limitations specific to any impairment that he or she has found to be severe. The law in this district is otherwise. *Burns v. Astrue*, No. 2:11-cv-151-GZS, 2012 WL 313705, at *4 (D. Me. Jan. 30, 2012) ("[A] finding of a severe impairment need not always result in limitations in an RFC."). The second erroneous premise holds that, because Dr. Trumbull did not include in his findings any physical limitations that appear to the plaintiff to be in excess of those imposed by Dr. Hall, Dr. Trumbull could not have been including any limitations due to the plaintiff's cardiomyopathy. He cites no authority in support of this constricting view of the role of a state-agency reviewer: if there is a previous physical RFC review in the record, a subsequent reviewer can only add limitations to that assessment should he

---

[3] This argument, of course, acknowledges something other than finding "no limitations from the condition." Itemized Statement at 8.

9

or she conclude that an impairment in addition to those expressly considered by the earlier reviewer is also present.

As the defendant points out, Opposition at 10-12, Dr. Trumbull's opinion includes a lower level of limitation than does that of Dr. Hall. *Compare* Record at 356-58 *with id*. at 366-70. There is no dispute that Dr. Trumbull expressly considered the plaintiff's cardiomyopathy. Itemized Statement at 9, Opposition at 11. It is not reasonable to conclude from this record that Dr. Trumbull did not "take[] the cardiomyopathy into account in his RFC[.]" Itemized Statement at 9. *See, e.g., Boatwright v. Commissioner of Soc. Sec.*, No. 11-14427, 2013 WL 1014826, at *2-*3, *8 (E.D. Mich. Feb. 20, 2013) (ALJ did not err in finding cardiomyopathy severe, but not causing significant functional limitations); *West v. Astrue*, No. 09-4125-RDR, 2010 WL 4643297, at *2, *5 (D. Kan. Nov. 9, 2010) (affirming ALJ findings that plaintiff's cardiomyopathy was severe impairment; related limitations were light work and standing and/or walking two hours out of eight-hour workday); *Mitchell v. Barnhart*, No. Civ. A. 04-1481, 2005 WL 562765, at *4 n.12, *5 (E.D. Pa. Mar. 7, 2005) (claimant's cardiomyopathy adequately accommodated by limitation to light exertion).

### C. Reliance on Opinions of State-Agency Reviewing Physicians

The plaintiff next challenges the weight given by the administrative law judge to the opinions of Dr. Hall and Dr. Trumbull. He contends that, because these physicians "did not review the complete medical record and, therefore, based their RFC opinions on incomplete evidence[,]" their opinions "are irreparably flawed and cannot constitute substantial evidence for the ALJ's RFC finding." Itemized Statement at 9-11.

Contrary to the plaintiff's assertion, this fact does not necessarily render the conclusions of the state-agency reviewers "irreparably flawed." *Id*. at 11. Each of the cases cited by the

plaintiff in support of this proposition is readily distinguishable. In *Alcantra v. Astrue*, 257 Fed. App'x 333, 334, 2007 WL 4328148, at **1 (1st Cir. Dec. 12, 2007), the First Circuit vacated a judgment for the commissioner where the administrative law judge had discounted the opinions of two treating sources and two consultants in favor of the opinion of one non-examining consultant who reviewed "no more than the first third of the record," which included no reports from therapists or treating psychiatrists.

In *Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995), the court held that the administrative law judge wrongly rejected conclusory affidavits from two treating physicians when "[t]he only contrary medical records" were from 11 months before the date of the affidavits, "before a marked change in Frankl's condition." The plaintiff provides no pinpoint citation for *Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308 (D. Me. Dec. 6, 2006), but that opinion, carefully limited to its facts, *id*. at *4, reports that the administrative law judge relied on RFC assessment from two non-examining state-agency consultants when subsequent records of the claimant's treating physician were deemed inconsistent with the medical evidence available to the state-agency reviewers so that "[o]ne cannot be confident that, had [the state-agency reviewers] seen the later evidence, they would have continued to opine that the plaintiff was capable of meeting the demands of light work[.]" *Id*. at *3.

Finally, in *Garland v. Barnhart*, No. 03-132-P-S, 2004 WL 413302, at *5 (D. Me. Mar. 3, 2004), the issue was the need to contact a claimant's treating physician, not whether an administrative law judge may ever rely on the opinions of non-examining state-agency reviewers who have not seen a claimant's subsequent treatment records. In any event, the answer to that question in this district, under the circumstances present in this case, is in the affirmative. *See, e.g., Vining v. Astrue*, 720 F.Supp.2d 126, 133 (D. Me. 2010).

In addition, the plaintiff makes no effort to demonstrate what specific evidence not seen by Dr. Hall and/or Dr. Trumbull would necessarily have altered their opinions in a manner favorable to the plaintiff. This is a requirement in this district in order to obtain a remand on this basis. *See, e.g., Wood v. Astrue*, No. 1:10-cv-243-JAW, 2011 WL 1298460, at * 2 (D. Me. Mar. 31, 2011), *citing Brown v. Barnhart*, No. 06-22-B-W, 2006 WL 3519308, at *3 (D. Me. Dec. 6, 2006). This omission is fatal to the plaintiff's appeal on this basis.

### D. Vocational Testimony

The plaintiff next argues that the hypothetical question posed to the vocational expert at hearing by the administrative law judge was "fundamentally flawed for all to the reasons discussed in detail" in connection with the issues previously discussed, and that he is, therefore, entitled to remand. Itemized Statement at 11-12. However, I have rejected all of those arguments. Neither the hypothetical question nor the vocational expert's responsive testimony was "fundamentally flawed." *Id.* at 12.

The plaintiff's final asserted ground for remand is an assertion that the vocational expert's testimony conflicted with the Dictionary of Occupational Titles, that the administrative law judge failed to obtain or provide an explanation for the conflict, and that he is, therefore, entitled to remand, citing Social Security Ruling 00-4p. *Id*. at 12-13. Specifically, the vocational expert identified two jobs at the light exertional level that the plaintiff could perform with the RFC assigned to him by the administrative law judge: courier and storage facility rental clerk. Record at 61-64.

These jobs are both listed at the light exertional level, which the plaintiff asserts contemplates the ability to stand and/or walk for up to six hours per day. Itemized Statement at

12

13; *see* 20 C.F.R. §§ 404.1567(b), 416.927(b).[4] Because the hypothetical question limited the plaintiff to walking and/or standing only four hours per workday, the plaintiff contends that the administrative law judge was required to elicit an explanation for this "discrepancy" from the vocational expert and to evaluate the explanation, which she did not do. Itemized Statement at 13. He asserts that he is, therefore, entitled to remand. *Id*. at 14.

However, the four-hour limitation was part of the vocational expert's testimony. Record at 61 (hypothetical question), 62-63 (courier), 63 (storage facility rental clerk). The plaintiff attacks the vocational expert's testimony with respect to the courier job because she testified that the courier would be "in a car a lot so I don't think there would be more than four hours of standing and walking with that job," *id*. at 63, while the description of the job in the Dictionary of Occupational Titles provides that the job involves "traveling on foot or by bicycle, motorcycle, automobile, or public conveyance." Itemized Statement at 14. He asserts that the vocational expert's statement about the four-hour limitation was "not reasonable" because she did not specify the percentage of such jobs that would be performed using a car. *Id*.

With respect to the storage facility rental clerk position, the plaintiff offers a single sentence: "Here the vocational witness gave no explanation whatsoever for how the storage rental clerk job, rated as light, could be performed by someone who could stand only four hours per day." *Id*. at 13. Contrary to the plaintiff's characterization, for which he cites no authority, this is not an "obvious conflict." *Id*. Even if it were, the vocational expert was not asked to explain it, and the plaintiff's attorney, who represented him at the hearing as well as on this appeal, Record at 32, Itemized Statement at 14, bore some responsibility to question the witness

---

[4] The vocational expert testified that "the light duty base . . . contemplates standing and walking up to six hours out of an eight hour day." Record at 65. The cited regulations actually say that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). This cannot reasonably be read to *require* standing and/or walking for six hours per eight-hour workday.

13

about the conflict.  *See Baker v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00167-JAW, 2011 WL 1298694, at *7 (D. Me. Mar. 31, 2011) (if claimant's attorney felt conflict existed, he could have explored issue with vocational expert at hearing).

In addition, where, as here, the four-hour limitation was included in the hypothetical question posed to the vocational expert, the administrative law judge was entitled to rely on her response as including that limitation and as being based on her training, education, and experience.  *Sokolowski v. Colvin*, No. 12-cv-942-bbc, 2013 WL 4782813, at *5 (W. D. Wisc. Sept. 6, 2013); *see also Barker v. Astrue,* Civil No. 09-437-P-S, 2010 WL 2680532, at *5 (D. Me. June 29, 2010).  Furthermore, I find persuasive the reasoning of courts that have rejected very similar arguments. *See, e.g., Roybal v. Colvin,* No. EDCV 12-02198-JEM, 2013 WL 4768033, at 15 (C.D. Cal. Sept. 4, 2013) (when RFC specifies less than full range of light work, limitation to four hours of standing or walking "fits comfortably into the range of frequent activity for light jobs"; thus, no inconsistency between VE testimony and DOT); *Bratton v. Astrue*, No. 2:06-0075, 2010 WL 2901856, at *3 (M.D. Tenn. July 19, 2010) (vocational expert testimony identifying light jobs that involved standing or walking for four hours out of eight-hour day does not conflict with DOT).

This court has repeatedly stated that one job is sufficient to satisfy the commissioner's burden at Step 5 of the sequential evaluation process. *Kramer v. Astrue*, No. 1:10-cv-207-JAW, 2011 WL 1158234, at *3 (D. Me. Mar. 25, 2011).  My conclusion that the storage facility rental clerk job remains viable in this case makes it unnecessary to consider the courier job further, although many of the considerations discussed with respect to the rental clerk job would apply to that position as well.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of March, 2014.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge